UNITED STATES DISTRICT COURT                    For Online Publication Only
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
PAUL ANDERSON,

                                                **ORDER**
                          Plaintiff,            15-CV-5351 (JMA)(AYS)


            -against-


COUNTY OF NASSAU, ARMOR
CORRECTIONAL HEALTH OF
NEW YORK, JOSE ARMAS, M.D.,
CHILDA MARGOS, M.D., and SHERIFF
MICHAEL J. SPOSATO,

                          Defendants.
--------------------------------------------------X
APPEARANCES:


        Paul Anderson
        251 Sheridan Street
        Westbury, NY 11590
                *Pro Se Plaintiff*

        John J. Doody
        Dale Nicholson McLaren
        Lewis Brisbois Bisgaard & Smith, LLP
        77 Water Street, Suite 2100
        New York, NY 10005
                *Attorney for Defendants County of Nassau, Armor Correctional Health of N.Y.,*
                *Jose Armas, M.D. and Childa Margos, M.D.*

        Liora M. Ben-Sorek
        Thomas Lai
        Nassau County Attorney's Office
        One West Street
        Mineola, NY 11501
                *Attorney for Defendants County of Nassau and Sheriff Michael J. Sposato*

**AZRACK, United States District Judge:**

Pro se plaintiff Paul Anderson ("Anderson" or "Plaintiff") brings this action against defendants the County of Nassau (the "County"), Sherriff Michael J. Sposato ("Sherriff Sposato") (collectively the "County Defendants"), Armor Correctional Health of New York ("Armor"), Jose Armas, M.D. ("Dr. Armas"), and Childa Margos, M.D. ("Dr. Margos") (collectively the "Armor Defendants") (all the defendants collectively the "Defendants"). The Complaint alleges deprivation of Plaintiff's civil rights pursuant to the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983, as well as a state-law negligence claim.

Presently before this Court are the Defendants' motions to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (See ECF Nos. 23 and 27.) For the reasons set forth below, Defendants' motions are granted.

## I. BACKGROUND

### A. Documents Considered

As is required in the context of this motion to dismiss, the factual allegations in the Complaint, though disputed by Defendants, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of the Plaintiff.

While facts to consider in the context of a Rule 12 motion to dismiss are generally limited to those set forth in the pleadings, a court may consider matters outside of the pleadings under certain circumstances. Specifically, in the context of a Rule 12(b)(6) motion, a court may consider: (1) documents attached to the Complaint as exhibits or incorporated by reference therein; (2) matters of which judicial notice may be taken; or (3) documents upon the terms and

effects of which the Complaint "relies heavily" and which are, thus, rendered "integral" to the Complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995). Moreover. "[a] court may take judicial notice of a documents filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (quoting Int'l Star Class Yacht Racing Ass'n Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998)).

Where, as here, the Complaint was filed pro se, it must be construed liberally with "special solicitude" and interpreted to raise the strongest claims that it suggests. Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks omitted). Nonetheless, a pro se Complaint must state a plausible claim for relief. See Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009).

The Court turns now to discuss the facts set forth in Plaintiff's Complaint, construed in his favor.

## B. Facts

### 1. Background

Plaintiff, an inmate at the Nassau County Correctional Center ("NCCC"), alleges that he suffers from several ailments, among them end stage renal disease and back pain due to a pinched nerve. (Complaint ("Compl.") at 2.).[1] Armor is a private company that provides medical services to inmates at the NCCC pursuant to a contract with the County. (Declaration of John J. Doody, ¶ 3, ECF No. 23-1.) Dr. Armas appears to be the sole owner and operator of Armor and

---

[1] For ease of reference, page numbers referenced herein are numbers assigned to pages on electronically filed documents, and not to the underlying documents themselves.

Dr. Margos appears to be the chief medical officer of Armor at NCCC. (Armor Defendants' Memorandum of Law In Support of Their Motion to Dismiss the Complaint ("Defs'. Br.") at 15, ECF No. 23-2; Compl. at 3.)

Plaintiff alleges that his renal disease requires both dialysis and that he be monitored weekly by a board certified nephrologist. (Id.) Plaintiff alleges that the weekly nephrologist monitoring is necessary to review his blood test reports and various critical levels in his body such as phosphate and potassium as well as fluid retention. (Id. at 2-3.) However, Plaintiff alleges that due to an alleged policy promulgated by Armor, Dr. Armas, and Dr. Margos, Plaintiff was denied access to a community-based nephrologist. (Compl. at 3; Declaration of John J. Doody, ¶ 3, ECF No. [23-1].) Plaintiff does not allege that he suffered any injury (or exacerbation of his condition) as a result of being denied access to a community-based nephrologist.

The Court notes that Plaintiff's complaint is devoid of any allegations that Dr. Armas personally treated Plaintiff or denied him access to any community-based medical care. Plaintiff's allegations against Dr. Armas solely concern his alleged promulgation of policies for the NCCC. Similarly, Plaintiff's allegations against Dr. Margos primarily concern her promulgation of policies for the NCCC. It is unclear to this Court what, if any role Dr. Margos had in personally treating Plaintiff.

Plaintiff also alleges that he suffers from an "AIV Fistula," which is caused by his renal disease and requires him to be monitored by a vascular surgeon. (Compl. at 3.) Plaintiff again alleges that access to this type of doctor was denied to him to due to the same alleged policy promulgated by Armor/Dr. Armas, and Dr. Margo that denied him access to a community-based

nephrologist.  (Id.)  Plaintiff does not allege that he suffered any injury (or exacerbation of his condition) as a result of being denied access to a vascular surgeon.

Next, Plaintiff claims that he suffers from a pinched nerve and is supposed to be prescribed "Neurontin and Ultram."  (Compl. at 3.)  Plaintiff alleges that Armor and Dr. Armas have a policy of not prescribing pain medications, and therefore will not give Plaintiff "a sufficient dose of Neurontin, within therapeutic level."  (Id.)  Plaintiff does not allege that he suffered any pain or increase in pain as a result of the denial of Plaintiff's desired dosage of medication.

Finally, Plaintiff alleges that he suffered a fall due to a wet floor on both June 30, 2015 and on July 2, 2015.  (Compl. at 4.)  Plaintiff claims that the July 2, 2015 fall caused pain and swelling in his right knee.  (Id.)  Plaintiff alleges that after filing a grievance he was provided treatment by an orthopedic specialist, who he claims recommended an MRI.  (Id.)  Plaintiff claims that as a result of the cost and the Armor/Dr. Armas policy, Dr. Margos refused to approve the recommended MRI. Plaintiff's complaint does not include any allegations concerning the condition of his right knee after the denial of the MRI.

## 2.  Procedural History

Plaintiff commenced this action on September 11, 2015.  (See Compl.)  On the same day, Plaintiff submitted an application to proceed in forma pauperis ("IFP") , which the Court granted on October 22, 2015.  (See ECF No. 7.)  On November 20, 2015, the Armor Defendants requested a pre-motion conference for leave to file a motion to dismiss.[2]  (See DE [15].  On January 7, 2016, the Court waived the pre-motion conference and entered a briefing schedule for the Armor Defendants' motion to dismiss with the fully briefed motion being due on March 18,

---

[2] The Court notes that the Defendant County of Nassau is represented by both the Nassau County Attorney's Office as well as counsel for the Armor Defendants and raises arguments in both motions to dismiss as to why its dismissal from this matter is warranted.

2016.  (See ORDER dated 01/07/2016.)  On January 8, 2016, the County Defendants requested a pre-motion conference for leave to file a motion to dismiss, (see ECF No. 20), and on the same day, the Court waived the pre-motion conference and entered the same briefing schedule as the Armor Defendants' motion to dismiss.  (See ORDER dated 01/08/2016.)

On January 26, 2017, the District Court directed defense counsel to provide the status of the case by February 10, 2017, as a review of the docket indicated that the motions to dismiss had not been filed.  (See STATUS REPORT ORDER dated 01/26/2017.)  On February 1, 2017, the Armor Defendants filed a status report explaining that they had timely served Plaintiff with their motion and subsequently filed an affidavit of service indicating such, but as of February 1, 2017, Plaintiff had still not provided his Opposition.  (See ECF No. 24.)  The Armor Defendants further moved the Court to accept their motion to dismiss as fully briefed or in the alternative, dismiss Plaintiff's Complaint for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.  (Id.)

On March 8, 2017, the Court directed the Plaintiff to either "(1) file his opposition to defendant's motion to dismiss, or (2) indicate by letter to the Court that plaintiff does not wish to file an opposition but still intends to prosecute this lawsuit."  (ECF No. 25.)  On April 10, 2017, the Plaintiff filed a response indicating that he still intended to prosecute this lawsuit.  (ECF No. 26.)  On March 22, 2018, the County Defendants filed their fully briefed motion to dismiss, which was served on plaintiff on February 5, 2016.  (ECF No. 27.)  To date, Plaintiff has not filed opposition to either motion.

### 3. Causes of Action

The Complaint alleges that Defendants, by their deliberate indifference to his medical needs, subjected Plaintiff to cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments.

## C. **The Motion to Dismiss**

Defendants first argue that the Plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). (Defs'. Br. at 11.) Defendants next contend that Plaintiff has failed to state a claim under 42 U.S.C. § 1983. (Id. at 14.) Defendants assert that Plaintiff fails to allege that any of the Defendants were acting under the color of state law or that that any individual defendant performed any act or caused Plaintiff any harm or exacerbated any of his pre-existing conditions. Id. Defendants further argue that the Plaintiff has failed to allege any personal involvement by Dr. Armas or Dr. Margos and thus has failed to state any § 1983 claim against them. Defendants next assert that Plaintiff's allegations are conclusory and that he has failed to allege any official policy of depriving inmates adequate medical treatment. Defendants similarly contend that Plaintiff has failed to state a § 1983 claim against the County because he has failed to allege any facts that a municipal custom or policy exists that deprived him of any constitutional right. Lastly, Defendants argue that the Plaintiff has failed to set forth an Eighth Amendment claim arising out of inadequate medical care.

Defendants' exhaustion defense cannot be resolved on this motion to dismiss because plaintiff's failure to exhaust is not apparent from the face of the complaint. However, as explained below, plaintiff's claims fail on the merits because he has not plausibly alleged: (1) any claims under the Eighth Amendment; (2) personal involvement of the individual defendants in any alleged violation; or (3) Monell liability against Nassau County or Armor.

## III. DISCUSSION

### A.  Standard Applicable on Motions to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (quoting, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 119–20 (2d Cir. 2010). Facial plausibility is established by pleading sufficient factual content to allow a court to reasonably infer the defendant's liability.  Twombly, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 555.  Nor is a pleading that offers nothing more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," sufficient. Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 555).

District courts are "obligated to construe pro se complaint [s] liberally," Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), interpreting them "to raise the strongest arguments that they suggest," Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006).  Courts may not, however, read into pro se submissions claims inconsistent with the pro se litigant's allegations, Phillips v. Girdich, 408 F.3d 124, 127 (2d Cir. 2005) (citation omitted), or arguments that the submissions themselves do not "suggest," Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006).  Pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law."  Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted).

With these standards in mind, the Court turns to assess the viability of Plaintiff's claims.

### B.  Section 1983

42 U.S.C. §1983 ("Section 1983") provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

Section 1983 itself creates no substantive rights, but rather provides only a procedure for redress for the deprivation of rights established elsewhere. Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985) (citation omitted); Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999). To state a claim under § 1983, "a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." Eagleston v. Guido, 41 F.3d 865, 876 (2d Cir. 1994) (citations and internal quotation marks omitted); see also Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010).

## C. Section 1983: Inadequate Medical Care Claims

### 1. Standard

As an initial matter, the Court notes that it is unclear whether Plaintiff was a pretrial detainee or an incarcerated prisoner. It is well established that "the Eighth Amendment protects incarcerated prisoners from cruel and unusual punishment in the form of inadequate medical care, [and] the Due Process Clause of the Fourteenth Amendment protects pretrial detainees from inadequate medical care be the state." Richardson v. Nassau Cty., 277 F. Supp. 2d 196, 201 (E.D.N.Y. 2003). "[R]egardless of the academic distinction between the Eighth and Fourteenth Amendments, the standard for analyzing a pre-trial detainee's Fourteenth Amendment claim is the same as the Eighth Amendment standard." Id. (internal quotation marks omitted); see also Broadway v. Town of Southampton, 826 F. Supp. 2d 458, 466 (E.D.N.Y. 2011) ("Claims for deliberate indifference to a serious medical condition . . . should be analyzed under the same standard irrespective of whether they are brought under the Eight or Fourteenth Amendment.").

Therefore, "the Second Circuit has applied the Eighth Amendment test for adequate medical care to a pre-trial detainee's right to the same." Myrie v. Calvo/Calvoba, 591 F. Supp. 2d 620, 625 (S.D.N.Y. 2008).

To state an Eighth Amendment claim under Section 1983 based on inadequate medical care, a prisoner must allege "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). The deliberate indifference standard includes both objective and subjective components. Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011). The objective component requires that "the alleged deprivation . . . be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." Hathaway v. Coughlin, 99 F.3d 550, 554 (2d Cir. 1996) (internal quotation marks and citation omitted). The subjective component requires that "the charged official . . . act with a sufficiently culpable state of mind" (i.e., "with deliberate indifference to inmate health'). Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006). "Deliberate indifference is a mental state equivalent to [criminal] recklessness," which means that "the charged official [must] act or fail to act while actually aware of a substantial risk that serious inmate harm will result." Id.

Thus, to survive a Rule 12(b)(6) motion to dismiss, "the prisoner must plausibly allege that the official knew of the prisoner's serious [medical] need and deliberately disregarded it." Villar v. Ramos, 2015 WL 3473413, at *3 (S.D.N.Y. June 2, 2015) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)); Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)) (additional citation omitted). "[M]ere allegations of negligent malpractice do not state a claim of deliberate indifference . . . ." Hathaway, 99 F.3d at 553; see also Estelle, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does

not state a valid claim of medical mistreatment under the Eighth Amendment."). "[M]ere disagreement over the proper treatment [likewise] does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

### 2. Plaintiff Fails To Allege a Claim of Deliberate Indifference

Here, Plaintiff's allegations do not state a plausible deliberate indifference claim. Wholly absent are any allegations that plausibly suggest that the treatment provided to Plaintiff was not reasonable.

While Plaintiff details the possibilities of what could happen if Plaintiff is not provided adequate treatment for his renal disease, Plaintiff does not allege that he has personally experienced any of these possibilities. Plaintiff has not alleged any injury or exacerbation of his condition as a result of the allegedly unconstitutional conduct. Similarly, Plaintiff has not alleged any injury from the Defendants' denial of an MRI for his right knee.

Moreover, Plaintiff's claims also fail because they are mere disputes about proper treatment and do not rise to the level of deliberate indifference. Plaintiff alleges that he was denied access to outside care for his renal disease and denied sufficient pain medications. Plaintiff's pleadings, however, clearly indicate that he regularly received treatment, though he may have disagreed with the course of treatment. Plaintiff was provided with, inter alia, medications and regular monitoring and dialysis. Such allegations demonstrate that Defendants were not deliberately indifferent to Plaintiff's medical needs. See Cephas v. Nassau Cnty. Corr. Ctr., 2014 WL 537576, at *5–6 (E.D.N.Y. Feb. 10, 2014) (dismissing the plaintiff's deliberate indifference claim against Armor because, even though the plaintiff may not have

received the medication he wanted, he did receive medication); see also Veloz v. New York, 339 F. Supp. 2d 505, 525 (S.D.N.Y. 2004), aff'd, 178 F. App'x 39 (2d Cir. Apr. 24, 2006) ("While prisoners have a right to medical care, they do not have a right to choose a specific type of treatment . . . . Differences in opinion . . . . over the appropriate medication to be prescribed is a disagreement over a treatment plan and does not implicate the Eighth Amendment."); Muhammad v. Cohen, 2015 WL 1973330, at * 11 (S.D.N.Y. May 1, 2015) ("[P]laintiff's disagreement with [the physician assistant's] medical decision as to the appropriate medication or dosage does not create a § 1983 claim.").

Nor does Plaintiff allege any facts from which it may be reasonably inferred that Defendants acted with a requisite state of mind, i.e., disregarded a substantial risk to Plaintiff's health and safety in not referring Plaintiff to a nephrologist or vascular surgeon and not authorizing an MRI or more pain medication. Plaintiff's failure to allege that the denial of the requested treatment caused him any injury (or exacerbated any of his conditions) is also relevant to the subjective element of his deliberate indifference claim.

### 3. Section 1983 Claims Against the Individual Defendants

#### i. Standard for Alleging Personal Involvement

To state a Section 1983 claim against an individual, the plaintiff must allege the personal involvement of a defendant in the purported constitutional deprivation. Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010). Personal involvement may be established by evidence of direct participation by a supervisor in the challenged conduct, or by evidence of a supervisory official's "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of

others by failing to act on information regarding the unlawful conduct of subordinates." Havut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003). "An individual cannot be held liable for damages under Section 1983 'merely because he held a high position of authority'...." Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004) (quoting Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996)). A complaint based upon a violation under section 1983 that does not allege the personal involvement of a defendant fails as a matter of law. See Johnson v. Barney, 360 F. App'x 199 (2d Cir. 2010) (summary order). "In this Circuit, a 'direct participant' [in the constitutional violation] includes a person who authorizes, orders, or helps others to do the unlawful acts, even if he or she does not commit the acts personally." Terebesi v. Torreso, 764 F.3d 217, 234 (2d Cir. 2014).

"In addition to fulfilling one of th[e] requirements [for supervisory liability], a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation." Littlejohn, 795 F.3d at 314 (quoting Raspardo v. Carlone, 770 F.3d 115, 116 (2d Cir. 2014)).

### ii. Dr. Armas

Plaintiff has not alleged the direct participation of Dr. Armas in any of the alleged violations of his constitutional rights, nor any basis upon which to find him liable in a supervisory capacity. Although Plaintiff alleges that Dr. Armas created the policies of denying pain management medication and access to community-based providers to inmates at the NCCC notwithstanding medical need, those conclusory allegations, without more, are insufficient to state a plausible claim for relief. See, e.g. Lindsey v. Butler, 43 F. Supp. 3d 317, 330 (S.D.N.Y. 2014), reconsideration granted on other grounds, 2014 WL 5757448 (S.D.N.Y. Nov. 5, 2014) ("In order to hold supervisors liable for creating a custom or policy fostering a

constitutional violation, courts in this Circuit have required that plaintiffs plead more than conclusory allegations of the existence of the custom or policy." (citing cases)); <u>Parris v. New York State Dep't Corr. Servs.</u>, 947 F. Supp. 2d 354, 364 (S.D.N.Y. 2013) ("Conclusory, unsupported allegations of . . . the existence of a policy are simply insufficient to establish liability of supervisory prison officials under **§** 1983." (quotations, brackets and citation omitted)); <u>Zembiec v. County of Monroe</u>, 766 F. Supp. 2d 484, 498 (W.D.N.Y. 2011), <u>aff'd</u> 468 F. App'x. 39 (2d Cir. Mar. 15, 2012) (holding that conclusory allegations that a supervisory official maintained an unconstitutional policy, "absent some factual allegations in support of those assertions" are insufficient to state a claim for relief). Plaintiff fails to plead any factual allegations from which it may reasonably be inferred that a custom or policy existed to deny inmates at the NCCC pain management medication and access to community-based providers notwithstanding medical need, or that Dr. Armas was aware that any inmate at the NCCC was denied pain management medication or access to community-based providers that was medically necessary. Indeed, the factual allegations and documents submitted by Plaintiff in his Complaint indicate only that Plaintiff was denied access to a nephrologist and vascular surgeon, denied pain medications at Plaintiff's desired dosage levels, and not provided with an MRI. Allegations of a single incident in which plaintiff was denied pain medication and, at most, two (2) incidents where his request to see an outside specialist was denied, are insufficient to establish the existence of a custom or policy. <u>See</u>, <u>e.g.</u> <u>Lindsey</u>, 43 F. Supp. 3d at 330-31; <u>Parris</u>, 947 F. Supp. 2d at 364. Thus, the branch of Defendants' motion seeking dismissal of Plaintiff's claims against Dr. Armas pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED and Plaintiff's claims against Dr. Armas are dismissed in their entirety for failure to state a claim for relief.

### iii. Dr. Margos

As with Dr. Armas, Plaintiff's primary allegations against Dr. Margos are that she promulgated the policies which denied Plaintiff access to community–based medical providers and his desired pain medications and dosages. However, the mere fact that an individual holds a high position of authority is not enough to be held liable under Section 1983. See Cofield v. Armor Corr. Health, Inc., 2013 WL 2416318, *3 (E.D.N.Y. May 31, 2013).

Supervisory officials like Dr. Margos will not be found liable under Section 1983 simply by virtue of their "high position of authority." Whitenack v. Armor Med., 2014 WL 5502300, at *5 (E.D.N.Y. Oct. 30, 2014) (quoting Al–Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989)) (citing Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004)) (internal quotation marks omitted); see Morgan v. Dzurenda, 2015 WL 5722723, at *6 (D. Conn. Sept. 19, 2015) (citing Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985)) ("Supervisory officials cannot be held liable under section 1983 solely for the acts of their subordinates."). Rather, liability may generally only be predicated upon the individual defendant's personal involvement in the purported constitutional violation. See Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 229 (2d Cir. 2004) (citing Back v. Hastings on Hudson Union Free School District, 365 F.3d 107, 122 (2d Cir. 2004)); Morgan, 2015 WL 5722723, at *6 (citing Colon, 58 F.3d at 873). A complaint asserting a § 1983 claim which does not allege facts establishing the requisite personal involvement "fails as a matter of law." Gaines, 2013 WL 6410311, at *3 (citing Costello v. City of Burlington, 632 F.3d 41, 48-49 (2d Cir. 2011)). As explained earlier concerning Dr. Armas, plaintiff's conclusory allegations about NCCC's purported policies are insufficient to plausibly allege the existence of such policies.

Broadly construed, Plaintiff's sole allegation involving Dr. Margos' personal involvment is that Dr. Margos refused to send Plaintiff for an MRI. However, this claim relates to a disagreement in treatment, which does not raise a constitutional violation. <u>See</u> <u>Flemming v. City of N.Y.</u>, 2009 WL 3174060, at *3 (E.D.N.Y. Sept. 30, 2009) ("Whether an MRI should have been done is a classic example of a matter for medical judgment as to the appropriate course of treatment and is not actionable under the Eighth Amendment." (internal quotation marks and citation omitted)); <u>see also</u> <u>Wright v. Genovese</u>, 694 F. Supp. 2d 137, 155 (N.D.N.Y. 2010).

Accordingly, the Armor Defendants' motion to dismiss Plaintiff's deliberate indifference claims against Dr. Margos is GRANTED and such claims are DISMISSED.

### iv. Sherriff Sposato

Here, Plaintiff's Complaint is devoid of a single allegation concerning Defendant Michael Sposato, the former Nassau County Sherriff. Even if the Court were to construe Plaintiff's grievances as somehow putting Sheriff Sposato on notice of Plaintiff's claims, such allegations are insufficient to impose Section 1983 liability upon Sheriff Sposato in a supervisory capacity. <u>See, e.g.</u> <u>Vogelfang v. Capra</u>, 889 F. Supp. 2d 489, 502 (S.D.N.Y. 2012) (holding that allegations that the Commissioner and Superintendent of the Department of Corrections failed to respond to letters from plaintiff were insufficient to establish their "personal involvement for the purposes of section 1983 liability." (quotations and citation omitted)); <u>Tafari v. McCarthy</u>, 714 F. Supp. 2d 317, 359 (N.D.N.Y. 2010) ("A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official failed to remedy the violation after learning of it through a report or appeal or allowed the custom or policy to continue after learning of it." (quotations and citation omitted)); <u>Rosales v. Kikendall</u>, 677 F. Supp. 2d 643, 650 (W.D.N.Y. 2010) ("[A] failure to process, investigate or respond to a prisoner's grievances does

not in itself give rise to a constitutional claim."); Johnson v. Wright, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) (finding that a letter to the Commissioner of the Department of Corrections complaining that the plaintiff was denied certain medical treatment "cannot create personal liability."); Rivera v. Goord, 119 F. Supp. 2d 327, 344 (S.D.N.Y. 2000) (holding that allegations that a prisoner's complaints were ignored by a supervisory official are insufficient to establish liability under Section 1983). "[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose *respondeat superior* liability." Johnson, 234 F. Supp. 2d at 363 (quotations and citation omitted); accord Atkins v. County of Orange, 251 F. Supp. 2d 1225, 1234 (S.D.N.Y. 2003). "[T]he mere fact that a defendant possesses supervisory authority is insufficient to demonstrate liability for failure to supervise under § 1983." Vogelfang, 889 F. Supp. 2d at 502 (quoting Styles v. Goord, 431 F. App'x 31, 33 (2d Cir. June 23, 2011) (summary order)).

Plaintiff has failed to plausibly plead Sheriff Sposato's personal involvement in any infringement of his constitutional rights. Accordingly, Plaintiff's Section 1983 claims against Sheriff Sposato are dismissed in their entirety for failure to state a claim for relief.

Since Plaintiff did not explicitly state that he is suing Sheriff Sposato in his individual capacity, the Court will also consider whether Plaintiff has stated a claim against Sheriff Sposato in his official capacity as Sheriff of Nassau County. In this regard, the Court points out that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the [governmental] entity [of which the officer is an agent]." Stancati v. Cty. of Nassau, 2015 WL 1529859, at *2 (E.D.N.Y. Mar. 31, 2015) (citing Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985) (alterations in original); Castanza v. Town of

Brookhaven, 700 F. Supp. 2d 277, 283–84 (E.D.N.Y. 2010)).  Therefore, a suit against Sheriff Sposato in his official capacity is a suit against the Nassau County Sheriff's Department.  It is well established, however, that as an "administrative arm of a municipality," the Nassau County Sheriff's Department is not a suable entity.  Campbell v. Sposato, 2015 WL 9267222, at *4 (E.D.N.Y. Nov. 17, 2015).  Unlike the Nassau County Sheriff's Department, Nassau County itself is a suable entity.  However, for the same reasons that Plaintiff has failed to set forth a claim against Armor, which is discussed in greater detail below, Plaintiff's Complaint fails to establish a claim for municipal liability.

### 4. Section 1983 Claims Against the County and Armor

"Private employers [acting under color of state law] are not liable under Section 1983 for the constitutional torts of their employees . . . unless the plaintiff proves that action pursuant to official . . . *policy* of some nature caused a constitutional tort."  Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408 (2d Cir. 1990); see also Green v. City of New York, 465 F.3d 65, 82 (2d Cir. 2006) (finding that a hospital was not vicariously liable for any constitutional torts that its employees may have committed).

To prevail on a Section 1983 claim against a municipality or private company acting under color of state law, a plaintiff must show:  "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality [or private company acting under color of state law] caused the constitutional injury."  Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008); see also Connick v. Thompson, 563 U.S. 51 (2011) ("Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that 'action pursuant to official municipal policy' caused their injury.") (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S.

658, 691 (1978)); Rojas, 924 F.2d at 409 ("Although Monell dealt with municipal employers, its rationale has been extended to private businesses [acting under color of state law].").

"Official . . . policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 563 U.S. at 61. In addition, liability can be established "by showing that a policymaking official ordered or ratified the employee's actions—either expressly or tacitly." Jones v. Town of East Haven, 691 F.3d 72, 81 (2d Cir. 2012). "Thus, a plaintiff can prevail against a municipality [or private company acting under color of state law] by showing that the policymaking official was aware of the employee's unconstitutional actions and consciously chose to ignore them." Id. To establish such deliberate indifference, "a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." Id.

The Court assumes, for the sake of argument, that Armor—a private company contracted to perform medical services for prisoners at the NCCC, see, e.g., Briel v. Sposato, 2012 WL 3697806, at *5 (E.D.N.Y. Aug. 21, 2012)—was acting under color of state law for purposes of Section 1983 with respect to its duties in rendering such medical services to inmates at the NCCC, including Plaintiff. See West v. Atkins, 487 U.S. 42, 54 (1988) (holding that a physician employed to provide medical services to state prisoners "acted under color of state law for purposes of Section 1983 when undertaking his duties in treating [the plaintiff's] injuries.")

However, Plaintiff's conclusory allegations regarding the purported policies of the County and Armor are insufficient to state a Section 1983 Monell claim against those defendants. See, e.g., Biswas v. City of New York, 973 F. Supp. 2d 504, 539 (S.D.N.Y.

2013) appeal dismissed sub nom, Biswas v. Kwait, 576 F. App'x 58 (2d Cir. Aug. 25, 2014), as amended (Aug. 28, 2014) ("[C]onclusory, boilerplate allegations are insufficient to state a claim based on the existence of an official policy."); Solomon v. Nassau Cty., 759 F. Supp. 2d 251, 263 (E.D.N.Y. 2011) ("Conclusory allegations of municipal custom or policy are insufficient to satisfy [Monell].").  Accordingly, the branch of Defendants' motions seeking dismissal of Plaintiff's claims against the County and Armor pursuant to Rule 12(b)(6) is granted and Plaintiff's Section 1983 claims against the County and Armor are dismissed in their entirety for failure to state a claim for relief.

## C. **State-Law Claims**

Under 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  However, courts "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." Id. § 1367(c); (c)(3); see Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d. Cir. 2011).  The Supreme Court explained: "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

Here, given the absence of a viably pled federal law claim, the interests of judicial economy, convenience, fairness, and comity weigh in favor of not exercising supplemental jurisdiction at this time.  Accordingly, the Court declines to exercise supplemental jurisdiction

over any potential state-law claims contained in Plaintiff's Complaint and dismisses any such claims without prejudice.

**D. Leave to Amend**

The Second Circuit has cautioned that, when a liberal reading of a pro se complaint "gives any indication that a valid claim might be stated," the district court should not dismiss the complaint without granting leave to amend. Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted); see Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). It is well settled, however, that "leave to amend a complaint need not be granted when amendment would be futile." Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003); see Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (holding that a "futile request to replead," even by a pro se litigant, "should be denied"). An amendment is "futile" if the proposed pleading would not withstand a motion to dismiss. See Jones v. Phelps Corp., 2014 WL 2195944, at *3 (N.D.N.Y. May 22, 2014).

In an abundance of caution, Plaintiff is granted leave to file an amended complaint in accordance with this order. Plaintiff is reminded, however, that, "[f]or purposes of Eighth [or Fourteenth] Amendment claims, the Supreme Court has drawn a 'distinction between mere negligence and wanton conduct . . . .'" Graham v. Poole, 476 F. Supp. 2d 257, 259-60 (W.D.N.Y. 2007) (quoting Whitley v. Albers, 475 U.S. 312, 322 (1986)). It is well-established that "mere negligence is not actionable, nor is 'mere medical malpractice . . . tantamount to deliberate indifference.'" Green v. McLauglin, 480 F. App'x 44, 48 (2d Cir. 2012) (quoting Chance, 143 F.3d 698, 703 (2d Cir. 1998)); see also Esteile, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); Salahuddin, 467 F.3d at 280 (stating that deliberate indifference "entails more

than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent").

Plaintiff is cautioned that the amended complaint completely replaces the complaint and therefore must include factual allegations and any claims Plaintiff seeks to pursue against the Defendants. The amended complaint must be clearly labeled "amended complaint," bear the same docket number as this order and must be filed with the Court by April 4, 2018. If Plaintiff does not timely an amended complaint, all of plaintiff's federal claims will be dismissed with prejudice, judgment shall enter, and this case will be closed.

Alternatively, Plaintiff may seek to pursue any valid state law claims he may have, including negligence, in state court.

### III.  CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss Plaintiff's claims in their entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure are GRANTED and Plaintiff's claims are dismissed in their entirety without prejudice for failure to state a claim for relief.  Plaintiff is GRANTED leave to file an amended complaint in accordance with the guidance set forth in this Order by April 4, 2018.  Further, if Plaintiff does not file an amended complaint by April 4, 2018, all of his federal claims will be dismissed with prejudice, and this case will be closed.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).  The Clerk of the Court is respectfully requested to send a copy of this Order to the pro se plaintiff.

**SO ORDERED.**

Dated: Central Islip, New York
        March 31, 2018

                                            _____/s/ (JMA)_____
                                            Joan M. Azrack
                                            United States District Judge